**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>FIDENCIO MELENDEZ,<br><br>Debtor. | Bankruptcy Case No. 18-12485 TBM<br>Chapter 13 |

**MEMORANDUM OPINION AND ORDER**
**DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

### I.   Introduction.

Bankruptcy is a bargain. Chapter 13 of the Bankruptcy Code[1] "affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1690 (2015). The *quid pro quo* is the Chapter 13 plan. A debtor must propose and obtain Court approval of a "plan under which [the debtor] pay[s] creditors out of . . . future income." *Hamilton v. Lanning*, 130 S. Ct. 2464, 2469 (2010). If the debtor makes "all payments under the plan," the debtor earns the right to a discharge and "fresh start" free from most prior financial burdens.

In this case, Fidencio Melendez (the "Debtor") filed for Chapter 13 bankruptcy protection and immediately proposed a plan. His plan was simple. He proposed to pay $142 per month for 60 months to the Chapter 13 Trustee. Such payments were to be used to pay only his lawyer, the Internal Revenue Service, and Chapter 13 Trustee fees. The plan contemplated that the Debtor would continue to make substantial voluntary retirement contributions (almost $1,000 a month) for his own benefit so that he could retire early. Meanwhile, the Debtor proposed that his general unsecured creditors — including credit card companies holding about $66,000 in debt racked up before the bankruptcy — receive nothing.

The Chapter 13 Trustee objected that the Debtor's plan lacked good faith. The Court agrees and concludes that the Debtor's plan is an abuse of the purpose and spirit of Chapter 13 as well as a manipulation of the bargain represented by the Bankruptcy Code. So, the Court denies confirmation.

---

[1]   All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

1

## II. Jurisdiction and Venue.

This Court has jurisdiction to enter final judgment on the issues presented in this bankruptcy case pursuant to 28 U.S.C. § 1334. The plan confirmation dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(L) (confirmation of plans), and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Procedural Background.

The Debtor filed for protection under Chapter 13 of the Bankruptcy Code on March 29, 2018.[2] The same day, he filed a proposed "Chapter 13 Plan Including Valuation of Collateral and Classification of Claims" (the "Plan").[3] Standing Chapter 13 Trustee Adam M. Goodman (the "Chapter 13 Trustee") objected to confirmation of the Debtor's Plan on a number of grounds including "lack of good faith" under Section 1325(a)(3) (the "Objection").[4] The Court conducted an initial Confirmation Hearing and directed the parties to submit legal briefing on confirmation issues.[5] Thereafter, the Court presided over an evidentiary hearing on confirmation of the Debtor's Plan. During the evidentiary hearing, the Debtor testified as the only witness. In addition to the testimonial evidence, the Court admitted Exhibits A-H. Furthermore, the Debtor and the Chapter 13 Trustee introduced a "Statement of Stipulated Facts," which served to streamline the evidentiary hearing.[6] At the conclusion of the evidence, the parties presented the Court with their oral closing arguments. Thereafter, the Court took the dispute under advisement and now issues its decision. The Court commends the parties and counsel for their professionalism and very capable legal work throughout the contested confirmation process.

## IV. Findings of Fact.

### A. The Debtor's Background and Employment.

When he filed for bankruptcy protection, the Debtor was about 55 years old.[7] He lives alone and has no dependents. The Debtor graduated from high school and worked all his adult life, including work at a sheep farm, assembly plant, plastics plant, and his current long-term job. For the last 27 years, he labored at Carestream Health, Inc. (or its predecessors). The company provides imaging products and services for the health care industry. The Debtor is a production worker who prepares x-ray film. He operates and maintains machinery. Occasionally, his job requires physical labor, including cleaning machinery and pulling waste x-ray film sheets. The Debtor works 12-

---

[2] Docket No. 1 and Ex. A. Unless otherwise indicated, the Court will refer to particular documents contained in the CM/ECF docket for this Bankruptcy Case using the convention: "Docket No. ___."
[3] Docket No. 2 and Exhibit G.
[4] Docket No. 16.
[5] Docket No. 18.
[6] Docket No. 27.
[7] The Debtor was born on October 1, 1963. Stip. Fact No. 3.

hour shifts rotating between days and nights. His employment is stable, although he worries about the general business prospects for the x-ray film industry.

The Debtor wants to retire in about five years at age 60. During his testimony, the Debtor was adamant that he desires to be "done working" in a few years. After his early retirement, the Debtor plans "to do nothing." He wishes to "just relax."

**B.     The Debtor's Assets and Liabilities.**

When he filed for bankruptcy protection, the Debtor listed $500,750 in assets and $253,288 in liabilities.[8] His largest asset is a 401(k) retirement account (the "Retirement Account") worth $254,222.[9] His other significant asset is his home in Fort Collins, Colorado: a two-bedroom condominium that he has owned for 16 years. The real property is worth $242,678 but is encumbered by a $179,880 mortgage. So, the Debtor has some equity in the condominium. His other assets are quite modest in value and consist of: an older model car worth $500; household appliances, furnishings, electronics, and clothes valued at $875; and some financial assets (two small bank accounts, unpaid wages, and an anticipated tax refund) worth $2,475. The Debtor claims all his assets (except $1,002 in property) are exempt.[10]

On the liabilities side of his balance sheet, the Debtor's largest debt is his mortgage loan. The mortgage debt was substantially current as of the bankruptcy filing. The Debtor has continued to make monthly mortgage payments during the bankruptcy case, so the balance is declining. A few months after the bankruptcy filing, his mortgage lender filed a proof of claim for $177,801.[11] In addition to his mortgage loan, the Debtor listed $5,658 in priority taxes owed to the Internal Revenue Service.[12] The IRS' proof of claim is slightly less.[13] All of the Debtor's other liabilities (except a small loan against the Retirement Account) consist of credit card obligations. According to his Schedule F, the Debtor ran up credit card bills of $64,992 prior to the bankruptcy filing.[14] But, creditors holding credit card claims filed proofs of claim totalling slightly more: $66,130.[15]

**C.     The Debtor's Income and Expenses.**

Consistent with his long-term employment, the Debtor has steady income. On his Schedule I, he estimated $5,017 in monthly gross wages from his job at Carestream Health, Inc.[16] His "Chapter 13 Calculation of Disposable Income" Form 122C-2 lists the

---

[8]   Ex. D.
[9]   Stip. Fact No. 5 and Ex. C.
[10]  Ex. C.
[11]  Ex. H.
[12]  Ex. C.
[13]  Stip. Fact No. 11 and Ex. H.
[14]  Ex. C.
[15]  Ex. H.
[16]  Ex. C. Schedule I is "forward-looking" and requires the debtor to estimate "monthly income as of the date you file this form." Such date generally is as of the petition date or shortly thereafter.

same amount of income.[17] The Debtor's pre-bankruptcy paystubs confirm $5,017 of gross monthly wages.[18] Since the Debtor's Schedule I and Form 122C-2 income calculations match, the Debtor has, in effect, disclosed that his average monthly income in the six months before his bankruptcy filing is the same as his estimated monthly income as of the petition date. Furthermore, the Debtor's income is "above-median" for a one-person household in Colorado.[19]

For the six months before he filed bankruptcy, the Debtor made voluntary contributions of $995 per month to his Retirement Account.[20] In addition, he repaid $146 per month to his Retirement Account for a loan he made himself from his Retirement Account three years ago. The Debtor anticipates that the Retirement Account loan will be repaid by November 2019 if he continues to repay at the current rate. The Debtor testified that he made regular voluntary contributions to his Retirement Account for about two decades. The size of his Retirement Account — $254,222 — corroborates the Debtor's testimony about his long-term contributions. The Debtor's other payroll deductions (for taxes and insurance), as identified on his Schedule I, appear standard. After subtracting all the Debtor's payroll deductions from his gross monthly wages, the Debtor estimated $2,472 in "combined monthly income" on his Schedule I.

The Debtor's expenses are modest. He pays $1,042 per month on the mortgage loan for his home.[21] According to his Schedule J, after subtracting the costs of food, utilities, transportation, and clothing, the Debtor estimates "monthly net income" of just $143. The Form 122C-2 means test calculation presented by the Debtor is slightly less and shows "monthly disposable income" of $ -81.[22] Both calculations — one "forward-looking" and the other "backward-looking" — were made on the basis of the Debtor "deducting" the $995 monthly contribution the Debtor has made and proposes to continue making to his Retirement Account.

### D. The Debtor's Chapter 13 Plan.

The Debtor's Plan is exceedingly simple. The Debtor proposes to pay the Chapter 13 Trustee $142.03 per month for sixty (60) months resulting in total payments of $8,521.80.[23] The proposed monthly payments to the Chapter 13 Trustee mirror the Debtor's Schedule J estimate of "monthly net income." The Debtor states that such payments will be used as follows:

---

[17] Docket No. 5. Form 122C-2 is "backward-looking" in the sense that the debtor must calculate an "average monthly income . . . derived during the 6 full months before" the bankruptcy petition.
[18] Ex. F.
[19] Docket No. 5. The Debtor's annual income reported on his "Chapter 13 Statement of Current Monthly Income" Form 122C-1 was $60,200 compared to the "median family income" in Colorado for a one-person family of $56,698.
[20] Ex. C and E.
[21] Ex. C.
[22] Docket No. 5.
[23] Stip. Fact No. 9 and Ex. G.

4

   $ 2,011.00  To be paid to Debtor's Counsel (for legal fees)
   $ 5,658.28  To be paid to IRS (for satisfaction of priority debt)
   <u>$  852.52</u>  To be paid to Chapter 13 Trustee (for trustee compensation)

   $ 8,521.80  Total

In addition, the Debtor proposes to make direct monthly payments of $1,042 on his mortgage loan. Further, he desires to continue paying back $68 to himself for the loan from the Retirement Account. And, implicit in the proposal is the Debtor's intention to continue his voluntary $995 per month 401(k) contribution to his Retirement Account. The rub comes on the $66,130 in credit card debt. Put bluntly, the Debtor proposes to stiff the credit card claims by paying nothing whilst voluntarily contributing $59,700 ($995 per month) to his own Retirement Account over the five-year Plan period.

**V.  The Legal Issue.**

**A.  The Objection.**

  Only the Chapter 13 Trustee objected to the Plan. He contended:

> 1. Based upon a review of the Debtor's pay advices, it appears that the Debtor's net monthly income as reflected on Schedule I may be understated. An average of 16 pay advices provided by the Debtor reflect an average net monthly income of $3,205.53 while Schedule I reflects net monthly income of $2,472.28. The Debtor's Plan and Schedules should be amended to provide for the contribution of all additional disposable income to the instant Chapter 13 case. 11 U.S.C. § 1325(a)(3), 1325(b)(1)(B).
>
> 2. The Debtor's proposal to contribute $995 per month toward a Retirement Savings Account, while proposing a $0 distribution to unsecured creditors may be excessive and may indicate a lack of good faith [under] 11 U.S.C. § 1325(a)(3) and *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007).

Objection at 1.[24] The Court refers to the Chapter 13 Trustee's first objection as the "Income Discrepancy Objection" and the second objection as the "Good Faith Objection."

  Notably, the Chapter 13 Trustee's Income Discrepancy Objection was not specifically linked to the issue of contributions to the Debtor's Retirement Account. Instead, it was somewhat generic and targeted toward an alleged discrepancy between the Debtor's Schedule I and the Debtor's pay advices. The Chapter 13 Trustee

---

[24] The Chapter 13 Trustee's other objections were resolved by the time of the evidentiary hearing.

5

asserted the first objection under two statutes: Section 1325(a)(3) (lack of good faith) and Section 1325(b)(1)(B) (failure to contribute all projected disposable income).

Meanwhile, the Chapter 13 Trustee's Good Faith Objection directly attacked the Debtor's $995 monthly contributions to his Retirement Account. But the objection was made only under Section 1325(a)(3) (lack of good faith). The Chapter 13 Trustee did not expressly assert that retirement contributions were improper under Section 1325(b)(1)(B) (failure to contribute all projected disposable income). The Chapter 13 Trustee's citation to *Shelton*, 370 B.R. 861, clarified his position. In that decision, the court determined that post-petition contributions to a retirement plan were generally permissible but subject to the requirement of good faith under Section 1325(a)(3). Ultimately, the *Shelton* court denied confirmation of a Chapter 13 plan for lack of good faith.

In his "Brief in Support of Objection,"[25] the Chapter 13 Trustee's objections seemed to evolve. He no longer asserted any discrepancy between the Debtor's pay advices and Schedule I. So, the Income Discrepancy Objection fell away. Instead, the Chapter 13 Trustee focused exclusively on the Debtor's retirement contributions under the Good Faith Objection. He started his written briefing by emphasizing the "projected disposable income" requirement of Section 1325(b)(1): "the plan [must] provide[] that all of the debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan." Then, the Chapter 13 Trustee discussed Section 541(b)(7)(A)(i) and an "oddly worded 'hanging' paragraph." He stated:

> This hanging paragraph has created a further divide on the issue of whether post-petition voluntary retirement contributions are excluded from the disposable income calculation. Several lines of cases have emerged, with varying conclusions. Courts in the 10th Circuit have joined this debate, but it does not appear that there is any binding precedent on the issue.[26]

Next, the Chapter 13 Trustee provided an exposition about three "lines of cases": *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010); *In re Jensen*, 496 B.R. 615 (Bankr. D. Utah 2013); and *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256 (Bankr. S.D. Ga. 2006). According to the Chapter 13 Trustee, the *Prigge* opinion "holds that a debtor may not make any post-petition voluntary contributions [to a retirement account]." And, the *Jensen* decision stands for the proposition that a debtor may "continue voluntary retirement contributions post-petition, but only if they were making contributions at the time of filing." Finally, the Chapter 13 Trustee acknowledged that the *Johnson* court "allows a debtor to exclude retirement contributions from the calculation of disposable income even if they were not making contributions at the time of filing."

---

[25] Docket No. 20.
[26] Docket No. 20.

*But, after all that, the Chapter 13 Trustee did not advocate that the Court adopt any of the "lines of cases."* Instead, he merely stated that "under the *Prigge* view, confirmation must be denied" while under *Johnson* and *Jensen*, the Debtor "must also show that his plan has been proposed in good faith under Section 1325(a)(3)." Then, supporting the remaining Good Faith Objection, the Chapter 13 Trustee presented his argument that the Debtor's Plan was not filed in good faith under Section 1325(a)(3).

At closing argument in the evidentiary hearing, the Chapter 13 Trustee again reiterated the holding of the *Prigge* decision: a debtor may not make *any* post-petition contributions to a retirement account. But counsel for the Chapter 13 Trustee did not advocate for that position. The Court pressed with the following questions and responses:

> Court: Are you saying that Chapter 13 debtors are prohibited from accumulating any retirement savings during the 5-year or 36-month period they are in bankruptcy?
>
> Chapter 13 Trustee Counsel: Your honor, the Trustee's position in this case is that the proposed distribution does not strike the appropriate balance . . . .
>
> . . . .
>
> Court: So you are not arguing for downright prohibition in every single case against some retirement savings?
>
> Chapter 13 Trustee Counsel: No, sir. [Not] in this case and on these facts.

The Chapter 13 Trustee then argued that the facts demonstrate that the Debtor's Plan lacked good faith under Section 1325(a)(3).

Based on the foregoing, the Court determines that, in the end, the Chapter 13 Trustee presented a single objection to confirmation of the Debtor's Plan: the Good Faith Objection. The Chapter 13 Trustee's objection is that the Debtor has not met his burden to show that the Debtor's Plan was filed in good faith under Section 1325(a)(3).

**B.     The Response.**

In his "Brief in Support of Confirmation"[27] the Debtor contended: "The Trustee did not assert that the retirement contributions should be disallowed in their entirety and did not object to their allowance under 11 U.S.C. § 541(b)(7) [and 11 U.S.C. § 1325(b)(2)]." Instead, the Debtor stated the issue as follows: whether "the Debtor's proposal to contribute $995 per month towards a Retirement Savings Account, while proposing a $0.00 distribution to his unsecured creditors may be excessive and may

---

[27]     Docket No. 21.

7

indicate a lack of good faith [under] 11 U.S.C. § 1325(a)(3)." Throughout the balance of the Debtor's legal brief and at the evidentiary hearing, the Debtor accepted that it was his burden to show good faith. He argued: "A bankruptcy court cannot simply decide that the payout to creditors is too small and refuse to confirm the plan."[28] In a nutshell, the Debtor contended that the facts establish that the Debtor's Plan was filed in good faith and his retirement contributions are necessary for his support and not excessive.

**C.      Identification of the Legal Issue.**

The Court has struggled to identify which legal issues properly are before the Court and must be decided. Embedded in this case is a very difficult threshold question concerning projected disposable income under Section 1325(b)(1): May a debtor make *any* voluntary retirement contributions during the pendency of a Chapter 13 case if any party objects? This basic question is easy to state but difficult to answer because of the complex and convoluted interplay of a series of statutes, including: Sections 101(10A), 541(b)(7), 707(b)(2), 1306, 1322(f), 1325(a)(3), 1325(b)(1)(B), 1325 (b)(2), and 1325(b)(3). It is a very important question, since many Chapter 13 plans in this jurisdiction contain at least some proposed voluntary retirement contributions. But, neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has weighed in yet. So, there is no controlling precedent.

The Chapter 13 Trustee correctly identified at least three major "lines of cases" on the issue. On the one side, in *Prigge*, 441 B.R. 667, the court effectively held that a Chapter 13 debtor may not make any post-petition voluntary contributions to a retirement account if any party objects.[29] The *Prigge* opinion often is cited as the "minority view." But, it has attracted substantial support, including the only circuit-level decision on the topic: *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012); *Parks v. Drummond (In re Parks)*, 475 B.R. 703 (9th Cir. BAP 2012); *In re McCullers*, 451 B.R. 498 (Bankr. N.D. Cal. 2011); *In re Green*, 2012 WL 8255556 (Bankr. E.D. Cal. May 7, 2012) (unpublished).

On the polar opposite side, in *Johnson*, 346 B.R. 256, the court held that a Chapter 13 debtor generally may make post-petition voluntary contributions to a retirement account even if such debtor did not make such contributions before bankruptcy,[30] provided that the Chapter 13 plan was filed in good faith under Section 1325(a)(3).[31] Courts in the *Johnson* camp include: *In re Gallichio*, 2019 WL 171468

---

[28]     Docket No. 21.
[29]     Put another way, the *Prigge* court concluded that voluntary retirement contributions are not excludable (or deductible) from projected disposable income under Section 1325(b)(1).
[30]     The *Johnson* court concluded that voluntary retirement contributions are excludable (or deductible) from projected disposable income under Section 1325(b)(1).
[31]     The *Johnson* court adopted a very narrow view of good faith under Section 1325(a)(3):

> Debtors are not required to contribute income from any of these sources [retirement contributions] to their Chapter 13 plans. Consequently, in determining good faith under § 1325(a)(3), I may not consider them . . . .

8

(Bankr. D.N.J. Jan. 9, 2019); *Miner v. Johns*, 2018 WL 2347095 (W.D. La. May 23, 2018); *In re Cantu*, 553 B.R. 565 (Bankr. E.D. Va. 2016), *subsequently aff'd Gorman v. Cantu,* 713 Fed. Appx. 200 (4th Cir. 2017) (affirmed on good faith issue; projected disposable income not addressed on appeal); *In re Drapeau*, 485 B.R. 29 (Bankr. D. Mass. 2013); *In re Hall*, 2013 WL 6234613 (Bankr. N.D. Ill. Oct. 22, 2013); *In re Egan*, 458 B.R. 836 (Bankr. E.D. Pa. 2011); *In re Gibson*, 2009 WL 2868445 (Bankr. D. Idaho Aug. 31, 2009); and *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007).

In between the *Prigge* and *Johnson* extremes, some courts have carved out a sort of middle ground compromise: a Chapter 13 debtor may make post-petition voluntary contributions to a retirement account, but only to the extent that the proposed post-petition contributions are consistent with the level of pre-petition contributions and provided that the plan was filed in good faith under Section 1325(a)(3). *See In re Thompson*, 2018 WL 1320171 (Bankr. S.D. Ala. Feb. 28, 2018); *In re Garza*, 575 B.R. 736 (Bankr. S.D. Tex. 2017); *In re Read*, 515 B.R. 586 (Bankr. E.D. Wis. 2014); *Burden v. Seafort (In re Seafort)*, 437 B.R. 204 (6th Cir. BAP 2010), *aff'd on other grounds,* 669 F.3d 662 (6th Cir. 2012).[32]

Courts within the bounds of the Tenth Circuit, like their brethren across the country, have reached contrary results. For example, in *Jensen*, 496 B.R. at 621, a Utah bankruptcy judge adopted the middle approach and ruled: "voluntary retirement contributions being made as of the date of petition do not constitute disposable income and debtors may continue making those contributions during the life of the plan." However, a year later, a Kansas bankruptcy judge rejected the *Jensen* holding and instead sided with the more liberal *Johnson* line of cases. *In re Vanlandingham*, 516 B.R. 628, 634-35 (Bankr. D. Kan. 2014).

All the foregoing suggests that there is no clear judicial consensus on the projected disposable income question in relation to voluntary retirement contributions (*i.e.*, whether a debtor is permitted to make *any* voluntary retirement contributions during the pendency of a Chapter 13 case if any party objects?). Although it is a key question in Chapter 13 bankruptcy, reluctantly, the Court declines to decide the issue in the context of this case for several reasons.

First and foremost, the Chapter 13 Trustee has not directly objected to the Debtor's Plan — which contemplates substantial voluntary retirement contributions — on projected disposable income grounds under Section 1325(b)(1). Instead, the only remaining objection is the Good Faith Objection under Section 1325(a)(3). Second, since he did not object to the Debtor's Chapter 13 Plan on projected disposable income

---

> Debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans.

*Johnson*, 346 B.R. at 263. Some courts in the *Johnson*-line of cases have employed a more holistic view of good faith under Section 1325(a)(3).

[32] The Sixth Circuit Court of Appeals rejected the middle ground approach invoked by the Bankruptcy Appellate Panel for the Sixth Circuit and instead endorsed the *Prigge* line of cases.

9

grounds, the Chapter 13 Trustee did not advocate that the Court adopt any of the three "lines of cases" he identified concerning voluntary post-petition retirement contributions or any other approach. In our adversarial system, failure to advocate is not particularly helpful and functionally often equates with waiver. What the Chapter 13 Trustee did was merely identify the split in case law on projected disposable income — without taking a position — and then move on to the "Good Faith Objection." Third, both the Chapter 13 Trustee and the Debtor centered the entire dispute on good faith under Section 1325(a)(3). Both sides agreed that the Debtor must meet his burden to establish good faith under Section 1325(a)(3). Fourth, the Court's decision (explained below) denying confirmation of the Debtor's Plan for lack of good faith under Section 1325(a)(3) is dispositive of the dispute in this case. As a result, the Court need not address the difficult projected disposable income issue in the context of this case.

The Court's prudential decision not to rule on the projected disposable income issue now is supported by analogous cases. For example, in *Gorman v. Cantu*, 713 Fed. Appx. 200 (4th Cir. 2017) (unpublished), a Chapter 13 trustee appealed confirmation of a Chapter 13 plan on the basis that the debtor was proposing post-petition retirement contributions. The Chapter 13 trustee objected for alleged lack of good faith under Section 1325(a)(3). He also presented the confusing three "lines of cases" and identified the statutory morass of projected disposable income. But, the Chapter 13 trustee did not ask for the appellate court to establish any standard. Accordingly, the Sixth Circuit Court of Appeals determined:

> This appeal, however, does not require that we resolve the statutory [projected disposable income] issue. As became clear at oral argument, the Trustee does not seek reversal on the ground that the majority [*Johnson*] approach adopted by the bankruptcy court is incorrect, or urge us to adopt some other identified standard. Instead, the Trustee argues . . . that a showing of good faith is a minimum requirement for exclusion of post-petition retirement contributions and . . . that the bankruptcy court erred in its good-faith determination.

*Id.* at 203. Thus, the appellate panel decided the dispute over post-petition retirement contributions solely on the good faith issue. Similarly, in *In re Rodriguez*, 487 B.R. 275 (Bankr. D.N.M. 2013), the Chapter 13 trustee focused his objection to plan confirmation on post-petition retirement contributions under Section 1325(a)(3) while stipulating that the debtor met the disposable income requirement. Consistent with the parties' approach, the court "confine[d] its consideration of the Debtor's voluntary retirement contributions to the good faith requirement under [Section] 1325(a)(3)." *Id.* at 285 n.11.

So, the Court finds that, in the exercise of its discretion, it should confine its decision to the single legal issue framed by the Good Faith Objection:

10

> Has the Debtor met his burden to establish that the Plan was filed in good faith where the Plan proposes zero distributions to unsecured creditors while permitting the Debtor to continue making substantial post-petition retirement contributions?

The more difficult projected disposable income issue will have to wait for another day or another case in which it is squarely presented and argued by the parties.

### VI. Conclusions of Law.

**A. Statutory Framework and Burden of Proof.**

The statutory starting place for this dispute is Section 1325, which provides the main framework governing the confirmation of Chapter 13 plans. The first part of the statute — Section 1325(a) — contains a list of nine Chapter 13 plan requirements that must be established by the debtor and assessed by the Court in every Chapter 13 case. Good faith under Section 1325(a)(3) is one of those. That part of the statute states:

> Except as provided in subsection (b), the court shall confirm a plan if — . . . (3) the plan has been proposed in good faith and not be any means forbidden by law.

Congress did not define the term "good faith."

The Debtor bears the burden of proof concerning the elements of Section 1325(a), including the issue of whether the debtor filed his plan in good faith under Section 1325(a)(3). *In re Vinger*, 540 B.R. 782, 786 (Bankr. D. Colo. 2015); *In re McDonald*, 508 B.R. 187, 205 (Bankr. D. Colo. 2014) (citing *In re Anderson*, 173 B.R. 226, 229 (Bankr. D. Colo. 1993) and *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 910 (Bankr. D. Colo. 1983)); *In re Toxvard*, 485 B.R. 423, 432 (Bankr. D. Colo. 2013); *In re Loper*, 367 B.R. 660, 664 n.5 (Bankr. D. Colo. 2007). The legal standard is the preponderance of the evidence. *In re Fassi*, 2013 WL 2190158, at *1 (Bankr. D. Colo. May 21, 2013) (citing *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002)).

**B. Good Faith Analysis under Section 1325(a)(3).**

**1. The *Flygare* and *Cranmer* Precedent on Good Faith.**

Within the jurisdiction of the Tenth Circuit Court of Appeals, the seminal appellate precedent on the good faith requirement for plan confirmation in Chapter 13 is: *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983). In *Flygare*, the Tenth Circuit Court of Appeals announced a "totality of the circumstances" approach in which:

11

> The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all of the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied.

709 F.2d at 1347 (quoting *U.S. v. Estus (In re Estus)*, 695 F.2d 311, 316-17 (8th Cir. 1982)). The Tenth Circuit adopted a list of eleven factors to be considered in the good faith analysis:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
>
> (3) the probable or expected duration of the plan;
>
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
>
> (5) the extent of preferential treatment between classes of creditors;
>
> (6) the extent to which secured claims are modified;
>
> (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
>
> (8) the existence of special circumstances such as inordinate medical expenses;
>
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
>
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
>
> (11) the burden which the plan's administration would place upon the trustee.

*Id.* at 1347-48 (quoting *Estus*, 695 F.2d at 317); *see also Mason v. Young (In re Young)*, 237 F.3d 1168, 1174-75 (10th Cir. 2001) (reconfirming *Flygare* factors for good faith

evaluation); *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir. 1993) (same); *Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 703-04 (10th Cir. 1989) (same). The *Flygare* list is "not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case." *Flygare*, 709 F.2d at 1347-48.

The *Flygare* decision pre-dates changes to the Bankruptcy Code — including to Sections 1325(b)(1) and (2) — made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). However, even post-BAPCPA, the Tenth Circuit Court of Appeals confirmed the vitality of *Flygare*. The key post-BAPCPA decision is *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314 (10th Cir. 2012).

In *Cranmer*, the debtor presented a Chapter 13 plan based upon the exclusion of Social Security income ("SSI") from the projected disposable income calculation. The Chapter 13 trustee objected to confirmation on two grounds: (1) failure to commit all projected disposable income under Section 1325(b)(1); and (2) lack of good faith under Section 1325(a)(3). The bankruptcy court "concluded SSI must be included in the projected disposable income calculation and that [the debtor's] failure to do so showed he did not propose his plan in good faith." *Cranmer*, 697 F.3d at 1316. Thus, the bankruptcy court denied confirmation. The district court reversed and held that "SSI need not be included in the projected disposable income calculation and failure to include it did not show . . . bad faith." *Id*.

On further appeal, the Tenth Circuit Court of Appeals sided with the district court and determined that SSI need not be included in the projected disposable income calculation. With respect to the Chapter 13 Trustee's good faith objection, the appellate panel endorsed *Flygare* and instructed:

> The good faith determination is made on a case-by-case basis considering the totality of the circumstances. *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir. 1983). In evaluating a debtor's good faith, courts should consider eleven non-exclusive factors [from *Flygare*] as well as any other relevant circumstances.

*Cranmer*, 697 F.2d at 1318-19. However, after listing the *Flygare* factors, the Tenth Circuit Court of Appeals recognized a "more narrow focus" post-BAPCPA in relation to "ability to pay." The appellate court stated:

> Since *Flygare* was decided, however, the Bankruptcy Code was amended to include 11 U.S.C. § 1325(b). . . . Section 1325(b)'s " 'ability to pay' criteria subsumes most of the *Estus* factors" and, therefore, the good faith inquiry now "has a more narrow focus." . . . A bankruptcy court must consider "factors such as whether the debtor has stated his debts and

13

> expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."

*Cranmer*, 697 F.3d at 1319, n.5 (internal citations omitted). Turning to the facts in *Cranmer*, the Tenth Circuit Court of Appeals rejected the Chapter 13 trustee's good faith objection holding: "When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith." *Id.* at 1319.

### 2. The Debtor's Plan Must Be Evaluated under the Totality of the Circumstances Standard.

In this case, the Chapter 13 Trustee's only remaining objection is the Good Faith Objection under Section 1325(a)(3). Since the Chapter 13 Trustee did not directly contest the Debtor's projected disposable income calculation under Section 1325(b)(1), the Court accepts (for purposes of this case only) that the Debtor may exclude his continuing voluntary retirement contributions from projected disposable income under the Bankruptcy Code. *See Jensen*, 496 B.R. 615; *Johnson*, 346 B.R. 256. Thus, at least at first blush, *Cranmer* appears to suggest that such exclusion may not constitute a lack of good faith.

However, the Court determines that the "totality of the circumstances" test for good faith announced in *Flygare* still applies in this case and that the *Cranmer* SSI scenario is distinguishable. "SSI is a type of income that Congress has deemed shall not be a part of a debtor's disposable income." *Jensen*, 496 B.R. at 622. But, voluntary retirement contributions are altogether something different. That is because, unlike SSI, voluntary retirement contributions are "voluntary." Furthermore, unlike SSI, voluntary retirement contributions are not income at all. Instead, voluntary retirement contributions are more akin to expenses. Put another way, the Debtor proposes to take a portion of his income and then contribute or pay that income into his Retirement Account. The decision is discretionary and is a choice to prefer the Debtor to his creditors. "This discretion is a crucial difference." *Jensen*, 496 B.R. at 623. Thus, the *Cranmer* decision does not foreclose a "totality of the circumstances" good faith inquiry.

The Court's decision to analyze the Debtor's voluntary retirement contributions under the "totality of the circumstances" standard is consistent with analogous case law from within the jurisdictional confines of the Tenth Circuit Court of Appeals assessing voluntary retirement contributions. *See Vanlandingham*, 516 B.R. at 638 (noting that "when an 'abusive' case presents itself, the trustee and unsecured creditors are well-armed with the ability to object to confirmation for lack of good faith under § 1325(a)(3)"; and concluding that "[t]here likely are circumstances in which the voluntary postpetition commencement of 401(k) contributions may constitute a lack of good faith"); *Jensen*, 496 B.R. at 623 (distinguishing *Cranmer* and holding that "it is appropriate to subject the Debtor's [voluntary retirement] plan contributions to a good faith inquiry"); *Rodriguez*,

487 B.R. at 285-86 (applying *Flygare* good faith factors to voluntary retirement contributions).

### 3. **The Debtor's Plan Was Not Proposed in Good Faith.**

#### a. **The Debtor's Proposed Plan Offers Nothing for Unsecured Creditors.**

The Debtor earns $5,017 in monthly gross wages from his job. According to his Schedule I, he makes payroll deductions of $1,213 for taxes, Medicare, and Social Security. He proposes to make a voluntary contribution of $995 per month to his Retirement Account. From the income perspective, the proposed voluntary retirement contribution constitutes approximately 20% of the Debtor's gross monthly wages or 26% of monthly wages after subtraction of taxes, Medicare, and Social Security. *Compare Vanlandingham*, 516 B.R. at 637 (plan confirmed where debtor proposed "modest" voluntary retirement plan contribution of 4% of her income; unsecured creditors projected to receive 8.4% distributions on claims); *Jensen*, 496 B.R. at 617-18 (plan confirmed where debtors proposed voluntary retirement contribution of 8.5% of their income; unsecured creditors projected to receive 10.8% distributions on claims). From the expenses perspective, the proposed monthly voluntary retirement contribution is the Debtor's single largest expense after his monthly mortgage payment of $1,042. No other expenses come close.

In the Plan, the Debtor proposes to pay the Chapter 13 Trustee a monthly plan payment of just $142.03 while making a voluntary contribution of $995 per month to his Retirement Account. Doing the math, the Debtor's proposed monthly voluntary retirement contribution is more than seven times the amount of the monthly Plan payment. The same math applies over the five-year term of the Plan. The Debtor proposes to pay his Retirement Account $59,700, which is more than seven times the $8,521.80 in payments under the Plan. *Compare Vanlandingham*, 516 B.R. at 637 (plan confirmed where debtor proposed voluntary retirement contributions of less than half of proposed plan payments to Chapter 13 trustee). And, the payments under the Plan will only benefit the Debtor's lawyer, the Chapter 13 Trustee, and the Internal Revenue Service.

Prior to the bankruptcy, the Debtor ran up about $66,130 in unsecured credit card debt. Notwithstanding that, the Debtor proposes to pay his Retirement Account $59,700 over the five-year term of the Plan, he proposes to pay unsecured creditors exactly — nothing. If, instead, he decided to pay unsecured creditors rather than his Retirement Account, the Debtor would be able to pay more than 90% of filed unsecured proofs of claim. Even splitting the difference, unsecured creditors might be able to realize a respectable 45% repayment on their aggregate debt. But again, under the Debtor's proposal, such unsecured creditors will not even receive "pennies on the dollar."

### b. The Debtor Failed to Prove that the Plan Was Proposed in Good Faith.

Having considered the *Flygare* factors as clarified by the *Cranmer* decision, the Court concludes that the Debtor failed to meet his burden to establish that the Plan was proposed in good faith. The Plan is an abuse of the purpose and spirit of Chapter 13 as well as a manipulation of the Bankruptcy Code. *Flygare*, 709 F.2d at 1347; *Cranmer*, 697 F.3d at 1319, n.5. More particularly, the Court questions the amount of the proposed payments to unsecured creditors — zero — as compared to the Debtor's proposed payments to himself through his voluntary contributions to his Retirement Account — $59,700. The difference in treatment is stark and telling. And, it provides a real insight into the purpose of the Debtor's Chapter 13 Plan. Clearly, the Debtor wishes to continue to enrich himself at the expense of his unsecured creditors. He ran up credit card debt before bankruptcy and now wants it extinguished so that he may retire early at age 60 and "just relax" for the rest of his years. The Debtor already has a very substantial nest egg of $254,222 in his 401(k) Retirement Account. In the Court's experience, the Debtor's savings is far more than most bankruptcy debtors. Further, it is exempt and completely protected. But, he wants more. And, he wants more at the expense of unsecured creditors who suffered by not being paid before bankruptcy. Both before and after bankruptcy, the Debtor has made sure always to continue to pay himself first through his Retirement Account.

The Debtor made no attempt to balance the interests of his creditors and himself through the bankruptcy process. In the context of discharge of student loans, the Tenth Circuit Court of Appeals stated:

> To be sure, we agree with the principle that saving for one's retirement is a laudable goal that should generally be encouraged. However, we also agree with the many other courts that have held that, in the context of bankruptcy proceedings, retirement contributions should not take precedence over repayment of preexisting debts.

*Woody v. U.S. Dep't of Justice (In re Woody)*, 494 F.3d 939, 952 (10th Cir. 2007).[33] But, that is just what the Debtor proposes to do.

In the Good Faith Objection, the Chapter 13 Trustee cited to *Shelton*, 370 B.R. 861. That case is particularly instructive and compelling. The *Shelton* facts are eerily like this case. In *Shelton*, the debtor:

> . . . propose[d] a zero percent dividend (or 0% payout) to unsecured nonpriority creditors, a payment to secured creditors of $550 a month, and a contribution of $655 a

---

[33] *Woody* did not involve an objection to confirmation of a Chapter 13 plan. Further, the decision focused on discharge of a student loan under 11 U.S.C. § 523 and 42 U.S.C. § 292f(g). Nevertheless, the *Woody* discussion of voluntary retirement contributions in bankruptcy is analogous authority.

> month to his retirement plan. The proposed plan would permit Debtor, over the course of the plan, to shelter $39,300 in his retirement account, pay approximately $33,000 to secured creditors or lose the assets representing collateral, pay nothing to unsecured creditors, and discharge $89,237 in, primarily, credit card debt

*Id.* at 868. The bankruptcy court determined that voluntary retirement contributions are excludable from projected disposable income — a result consistent with the *Johnson,* 346 B.R. 256, line of cases. But, the *Shelton* plan faltered on the shoals of good faith. The *Shelton* court stated:

> BAPCPA does not direct a court to abandon viewing the totality of the circumstances, nor impose a requirement that a court blind itself to the full picture of a debtor's finances.
> . . . .
>
> The easiest way to violate § 1325(a)(3) is to misrepresent, lie, or otherwise mislead the court. A lack of good faith does not necessarily require malice or an intent to deceive. . . . Compliance with the law and honesty are necessary for good faith but are not alone sufficient. While a zero dividend plan, such as in the instant case, is not *per se* bad faith, the amount of the payment to creditors in relation to a debtor's ability to pay is a relevant factor in determining good faith. . . . A court is under no compulsion to shield its eyes from the record in assessing good faith. Exempted and excluded assets and income may be relevant to determining whether chapter 13 is being used for equitable purposes.
> . . . .
>
> A plan that proposes to pay 0% to creditors when a debtor could pay substantially more is not a plan proposed in good faith.

*Id.* at 868-69 (citations omitted); *see also In re Lott*, 2011 WL 1981740 (Bankr. N.D. Ala. May 23, 2011) (unpublished) (similar analysis). Closer to home, this case also is similar to the New Mexico decision: *Rodriguez*, 487 B.R. 275. In that case, the debtor proposed to voluntarily pay $733 per month (about 5% of his gross monthly wages) into his own retirement account. The *Rodriguez* court assessed such amount to be "a material sum in the context of the Debtor's plan." Citing *Flygare*, the court ultimately determined that the debtor "failed to demonstrate that his proposed Chapter 13 plan was filed in good faith" because of the voluntary retirement contributions. *Id.* at 285.

At the end of the day in this case, the Court is left with a hard decision. The Debtor has not misled the Court, engaged in fraudulent representations, or misstated

17

his debts and expenses. To the contrary, he has been quite up-front and above-board. He admittedly wants to enlarge his already-substantial retirement savings, so he can retire early and then "just do nothing." But, it comes at the cost of his creditors. He proposes to voluntarily contribute $59,700 to his Retirement Account while leaving his unsecured creditors with nothing. In the Court's estimation, that type of plan is an abuse of the purpose and spirit of Chapter 13 as well as a manipulation of the Bankruptcy Code.

### VII. Conclusion.

For the reasons stated above, the Court denies confirmation of the Debtor's Plan for lack of good faith under Section 1325(a)(3). Within 15 days from the entry of this Order, the Debtor shall either file an amended Chapter 13 plan consistent with this Order or convert the case to Chapter 7, failing which the Court may dismiss the bankruptcy case under Section 1307(c).[34]

Dated:   February 20, 2019

By the Court:

Thomas B. McNamara
United States Bankruptcy Judge

---

[34] In his Brief in Support of Confirmation, the Debtor requests that, in the event that the Court finds that the Plan is not proposed in good faith, the Court make a judicial determination as to the exact amount he can contribute to his Retirement Account. Unfortunately, the Bankruptcy Code does not provide a bright-line test that would enable the Court to make this kind of pronouncement, and the Court declines to create such a mathematical test from whole cloth. The Court must engage in the difficult test of examining each case separately — based on "its own facts and after considering all of the circumstances." *Flygare*, 709 F.2d at 1347.